# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **SYDNEY HOLM MORGAN,** | ) |
| **Plaintiff,** | ) |
| v. | ) Civil Action Number |
|  | ) **4:20-cv-02029-AKK** |
| **KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,** | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Sydney Holm Morgan asks the court to reverse the decision of the Acting Commissioner of the Social Security Administration denying benefits. Doc. 1. Morgan maintains that the Administrative Law Judge who adjudicated her case improperly discounted the opinion of her treating psychologist, failed to determine her disability onset date under the proper regulations, and posed inaccurate hypothetical questions to the vocational expert who testified at the hearing. *See* doc. 12. Unfortunately, these arguments are either contradicted by the record evidence or unsupported by the law, and the court must affirm.

**I.**

Morgan, who briefly held prior work in childcare, filed for disability benefits in 2018 due to cerebral palsy, depression, anxiety, fibromyalgia, and back pain or arthritis with an alleged onset date of March 17, 2008. *See* docs. 12 at 1; 16 at 1–2.

After the SSA denied her claim, Morgan appeared at a hearing before an ALJ; the ALJ adjourned this initial hearing in order to summon a medical expert. *See* R. 62. After the second hearing, which Morgan, her mother, her attorney, a medical expert, and a vocational expert attended, the ALJ concluded that Morgan was not disabled. *See* R. 46. The Appeals Council declined review and also declined to exhibit evidence from Dr. Jarrod Warren dated August 2020 that Morgan's attorney submitted after the hearing. *See* R. 1–2. Morgan's appeal followed. Doc. 1.

## II.

On review, the court may decide only whether the record contains substantial evidence to support the ALJ's decision and the ALJ applied the correct legal principles. 42 U.S.C. § 405(g); *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020). Courts review de novo the legal conclusions upon which the Commissioner's decision is based, while the Commissioner's factual findings are conclusive if supported by "substantial evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Substantial evidence refers to "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* This threshold "is not high," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), and requires "less than a preponderance," *Moore*, 405 F.3d at 1211. If substantial evidence supports these findings, the court must affirm, even if the evidence preponderates against them. *Noble*, 963 F.3d at 1323.

When determining whether substantial evidence exists, the court cannot decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. *Id.*; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court also cannot automatically affirm the decision. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). Instead, the court "retain[s] an important duty to 'scrutinize the record as a whole' and determine whether the agency's decision was reasonable." *Simon v. Comm'r of Soc. Sec.*, 7 F.4th 1094, 1104 (11th Cir. 2021) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)).

### III.

The Social Security Act "places a very heavy initial burden on the claimant to establish existence of a disability by proving that he is unable to perform his previous work." *Bloodsworth*, 703 F.2d at 1240. In fact, "[t]his stringent burden has been characterized as bordering on the unrealistic." *Id.* (collecting cases). A claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 416(i)(1). An ALJ must determine:

(1) whether the claimant is currently unemployed;
(2) whether the claimant has a severe impairment;
(3) whether the impairment meets or equals one listed by the Commissioner;

3

>   (4) whether the claimant is unable to perform his or her past work; and
>   (5) whether the claimant is unable to perform any work in the national economy.

20 C.F.R. § 404.1520(a); *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

"An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *McDaniel*, 800 F.2d at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). If a claimant's impairments do not meet or equal a listed impairment at Step Three, the ALJ determines the claimant's "residual functional capacity" based on all of the relevant evidence. 20 C.F.R. § 404.1520(e). A residual functional capacity is "the most [the claimant] can still do despite [their] limitations." 20 C.F.R. § 404.1545(a)(1).

For claims filed after March 27, 2017, the ALJ will not defer or give any specific weight to medical opinions or prior administrative medical findings. 20 C.F.R. § 404.1520c(a); *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 897–98 (11th Cir. 2022) (holding that § 404.1520c applies to claims filed after March 2017 and abrogates the treating-physician rule for those claims). To determine the persuasiveness of an opinion or a prior finding, the ALJ focuses on factors that include supportability, consistency, the source's relationship with the claimant, and the source's specialization. 20 C.F.R. § 404.1520c(c). The most important factors are supportability and consistency. *Id.* § 404.1520c(a).

When a claimant provides testimony concerning their subjective symptoms, the ALJ must determine whether there exists "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the record shows the claimant has a "medically determinable impairment that could reasonably be expected to produce [their] symptoms," the ALJ must assess the "intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work" in light of the objective medical evidence and statements by the claimant and their doctors. *See Costigan v. Comm'r of Soc. Sec.*, 603 F. App'x 783, 786 (11th Cir. 2015) (citing 20 C.F.R. § 404.1529(c)(1)).

The ALJ must also examine the claimant's testimony in relation to the other evidence to discover any "inconsistencies or conflicts between those statements and the record." *Id.* If the ALJ subsequently discredits the claimant's testimony in light of those inconsistencies, the ALJ must "articulate explicit and adequate reasons for doing so"; otherwise, "the testimony [must] be accepted as true." *Wilson*, 284 F.3d at 1225 (citing *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). Taken together, the court "will not disturb a clearly articulated credibility finding supported by substantial evidence." *Mitchell*, 771 F.3d at 782 (internal citations omitted).

## IV.

In this case, the ALJ first determined that Morgan last met the insured status requirements on June 30, 2012, *i.e.*, her "date last insured." R. 48. Then, at Step One, the ALJ found that Morgan had not engaged in substantial gainful activity during the period from her alleged onset date in March 2008 through her DLI, and at Step Two, the ALJ determined that through Morgan's DLI, she had the severe impairments of cerebral palsy and depression. *Id.* At Step Three, the ALJ considered Morgan's mental impairments—including her "four broad areas of functioning"[1]—and found that Morgan did not have an impairment or combination of impairments that met or medically equaled a listing. R. 48–49.

The ALJ proceeded to evaluate Morgan's residual functional capacity in light of the evidence in the record, starting with the hearing testimony. R. 50. At the hearing, Morgan testified as to weakness in her hands, difficulty standing due to back issues, and pain due to her cerebral palsy. R. 63. She explained that her cerebral palsy had also hindered her ability to communicate, R. 66, and that she began visiting psychologist Dr. June Nichols for depression beginning in July 2019, R. 67. Morgan's mother testified that Morgan had had cerebral palsy since birth, R. 72, and that Morgan's muscles, pain, and depression had worsened as she aged, R.

---

[1] Morgan does not appear to challenge the ALJ's findings with respect to her mental impairment(s), and so the court does not discuss these findings in depth.

6

75; R. 78–79.  Morgan's mother also testified that she was not living with Morgan in 2012, around the time of Morgan's last insured date.  R. 83.

The ALJ also reviewed Morgan's treatment records dating back to 2012, beginning with those from Morgan's primary care physician, Dr. Anila Jamal.  R. 51.  On May 25, 2012, Morgan visited Dr. Jamal for depression, difficulty sleeping, an earache, and a rash and reported that she was filing for divorce and that her daughter had cancer, contributing to her depression.  R. 728.  She was diagnosed with depression, insomnia, tinea corporis, and sinusitis and prescribed Lexapro, Silenor, Ketoconazole, and Cefdinir.  R. 729.  Morgan followed up with Dr. Jamal's office throughout 2012 and received Wellbutrin, Lunesta, and Lyrica.  *See* R. 718; R. 722–28.  Morgan also visited Dr. Jamal after "[p]ull[ing] a muscle in [her] lower left back."  R. 720.  Records from this time period indicated some "painful" flexion, movements, and extension but also indicated "[n]o pain and full range of motion."  R. 721; R. 718.

Morgan continued to visit Dr. Jamal's office after her DLI in 2012.  *See generally* R. 412–13.  For example, throughout 2015, Morgan visited Dr. Jamal for depression, fibromyalgia, weight gain, hyperlipidemia, and asthma.  *See* R. 413.  In June 2015, Dr. Jamal recorded that Morgan had a "normal" gait, "normal" muscle strength with "[f]ull range of motion in all joints," and "[n]ormal joints and muscles."  R. 522–23.  In January 2016, Morgan was diagnosed with insomnia,

depression, weight gain, right hand weakness, acute sinusitis, and a ruptured ear drum.  R. 413.  In August 2016, Morgan was diagnosed with joint pain, in October 2016 with weakness, and in November and December 2016 with foot and limb pain.  *See* R. 412–13.  The ALJ noted these records and concluded that Dr. Jamal's notes "[did] not support [Morgan's] physical or mental allegations."  R. 51.

The ALJ then turned to Dr. Nichols's psychological treatment records.  *Id.*  At Morgan's initial assessment on July 15, 2019, Dr. Nichols recorded that Morgan had issues with depression and anxiety and that her cerebral palsy affected her hands and back, contributing to feelings of fatigue.  R. 815.  Morgan told Dr. Nichols that she had experienced abuse and suicidal ideation and that she had been diagnosed with multiple personality disorder, dissociative personality disorder, anxiety, depression, post-traumatic stress disorder, fibromyalgia, and a skin disorder.  *Id.*

Morgan continued to visit Dr. Nichols throughout 2019 and exhibited guarded behavior; fearful, anxious, and sad moods; and disorganized thought processes.  *See* R. 816–20.  Dr. Nichols reported that Morgan could understand, remember, and execute short and simple instructions but could not maintain concentration for up to at least two hours, perform activities within a schedule, adjust to routine work changes, or interact with supervisors or coworkers.  R. 821.  Dr. Nichols also opined that Morgan would need to be "off-task" 20 percent of each workday and miss between eight and 10 days in a 30-day work period.  *Id.*  The ALJ discussed Dr.

Nichols's records and opinion before concluding that her opinion "[was] inconsistent with her own treatment notes and the other objective evidence in the record." R. 52.

The ALJ also briefly summarized evidence from Morgan's nurse practitioner and the state-agency medical consultants. R. 50–52. The ALJ then concluded that

> through the date last insured, [Morgan] had the residual functional capacity to perform light work as defined in 20 CFR [§] 404.1567(b) except frequently handle and finger bilaterally. She could understand, remember, and carry out simple instructions and attend for two-hour periods. She could tolerate occasional interaction with the public and co-workers.

*Id.* The ALJ concluded that in light of the evidence, including Morgan's subjective allegations, Morgan "simply allege[d] a greater degree of debilitation than what the objective medical evidence support[ed]." R. 52.

At the hearing, the ALJ posed the following to the vocational expert:

> If that same individual who could perform work at a light level of exertion had no exertional limitations such that she could understand, remember, and carry out simple instructions, and attend to those for two-hour periods, and she could tolerate occasional interaction with the public and with coworkers, would she be able to perform Ms. Morgan's past work?

R. 92. The vocational expert testified that this hypothetical individual could not perform Morgan's past job as a daycare worker but could work as a bakery worker, laundry worker, or cleaner. *See* R. 91–93. The ALJ then asked whether this person would be able to perform these jobs if they

> could perform work at a light level of exertion, could frequently handle and finger bilaterally, and . . . could understand, remember, and carry

9

out simple instructions and attend to those for two-hour periods, and tolerate occasional interaction with the public and with coworkers.

R. 93. The expert replied in the affirmative. *Id.*

Relevant to Morgan's instant appeal, at the hearing, her attorney questioned the vocational expert about Morgan's past work in childcare, a job that Morgan's mother had helped her acquire. *See id.* In particular, Morgan's attorney asked the vocational expert whether Morgan's past work would count as "sheltered," and the vocational expert said that he would "consider them protected in nature," meaning these jobs were "more of an accommodated type of job versus a competitive job." *Id.* The expert further testified that Morgan's work may have qualified as "substantial gainful work" but that "given the personal statements, and her mother's statements, and the nature of the job," Morgan's past work "would not necessarily be a competitive level of employment." R. 94.

At Step Four, the ALJ concluded that Morgan could not perform her past work. R. 52. However, the ALJ concluded at Step Five that Morgan could perform other jobs such as bakery worker, laundry worker, or cleaner. R. 53. As a result, the ALJ found that Morgan was not disabled "at any time from March 17, 2008, the alleged onset date, through June 30, 2012, the date last insured." R. 54.

## V.

Morgan asserts that the ALJ failed to "accord proper weight" to Dr. Nichols's opinion, did not "determine the date of disability pursuant to Social Security Ruling

10

83-20," and improperly relied on the vocational expert's testimony using incomplete hypotheticals. *See* doc. 12 at 3.

### A.

Morgan first challenges the ALJ's decision for discounting Dr. Nichols's opinion that she could not concentrate or interact with supervisors or coworkers and would need to miss 20 percent of each workday or eight to 10 days of work per month. *See* doc. 12 at 22–23. According to Morgan, because Dr. Nichols was her treating psychologist, the ALJ should have followed the "treating-physician rule" and deferred to Dr. Nichols's opinion unless she had "good cause" to reject it. *See id.* at 24. And, Morgan says, the ALJ's explanation that Dr. Nichols's opinion "[was] not persuasive as it [was] inconsistent with her own treatment notes and the other objective evidence in the record," R. 52, did not suffice. *See* doc. 12 at 23–24.

To be sure, "[b]efore the promulgation of section 404.1520c, administrative law judges were instructed to defer to the medical opinions of a . . . claimant's treating physicians." *Harner*, 38 F.4th at 896–97. However, "[i]n 2017, the Commissioner eliminated the treating-physician rule." *Id.* Now, for disability claims filed after March 2017 like Morgan's, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)" and must instead consider the supportability and consistency of each opinion to determine its persuasiveness. *See*

11

*id.*; 20 C.F.R. §§ 404.1520c(a)-(c). While Morgan argues that the treating-physician rule remains in effect because the regulations "do not supersede Eleventh Circuit precedent," doc. 12 at 25–26, the Circuit has conclusively held that the regulations permissibly abrogate the treating-physician rule and control for claims filed after March 2017, *see Harner*, 38 F.4th at 897–98. Thus, Morgan's argument is now foreclosed.

Under § 404.1520c, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s)" and "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim," the more persuasive the ALJ will deem that opinion or finding. 20 C.F.R. §§ 404.1520c(c)(1)-(2). Here, the ALJ explained that she discounted Dr. Nichols's opinion about the extent of Morgan's limitations because it was not supported by Dr. Nichols's treatment notes or consistent with the other medical evidence in Morgan's record. *See* R. 52. The court cannot reweigh this evidence or substitute its own judgment for the ALJ's. *Noble*, 963 F.3d at 1323. Because the ALJ evaluated Dr. Nichols's opinion in accordance with the regulations, and the ALJ's conclusions are supported by "such relevant evidence as a reasonable person would accept as adequate," *see Moore*, 405 F.3d at 1211, the ALJ's decision is not due to be reversed on this ground.

12

B.

Morgan also argues that the ALJ did not properly determine Morgan's disability onset date under Social Security Ruling 83-20. Doc. 12 at 26. SSR 83-20 provides that, "[i]n addition to determining that an individual is disabled, the [ALJ] must also establish the onset date of disability" because the onset date "may affect the period for which the individual can be paid and may even be determinative of whether the individual is entitled to or eligible for any benefits." SSR 83-20 (1983); *see Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775–76 (11th Cir. 2010). Interpreting SSR 83-20, the Circuit has explained:

> There are two situations where the ruling suggests the need for the ALJ to call a medical advisor during a hearing: (1) where it may be possible, based on medical evidence, to 'reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination'; and (2) in terms of a malignant neoplastic disease, '[t]o establish onset of disability prior to the time a malignancy is first demonstrated to be inoperable or beyond control by other modes of therapy.'

*Klawinski*, 391 F. App'x at 776 (quoting SSR 83-20). Morgan maintains that the ALJ did not comply with SSR 83-20 because the ALJ specifically "should have sought medical advice on when [Morgan] became disabled." Doc. 12 at 29.

Based on Eleventh Circuit case law, this argument is unavailing. Indeed, Morgan herself quotes the Circuit's opinion in *Klawinski* that an ALJ "did not contravene SSR 83-20 because the ALJ ultimately found that [the claimant] was not disabled, and SSR 83-20 only required the ALJ to obtain a medical expert in certain

13

instances to determine a disability onset *after a finding of disability.*" *Id.* at 28 (quoting *Klawinski*, 391 F. App'x at 776) (emphasis added). Morgan suggests that the court should ignore this aspect of *Klawinski* because district courts within this Circuit have nonetheless "ruled that a finding of disability was not required before requiring a medical opinion on the onset date pursuant to SSR 83-20." *Id.* (citing *Bailey v. Colvin*, 224 F. Supp. 3d 1249, 1256–61 (N.D. Ala. 2016); *Chancey v. Berryhill*, No. 2:16-cv-719-KOB, 2018 WL 3781228, at *7 (N.D. Ala. Aug. 31, 2017)). However, Morgan misstates the holdings of these cases.

In *Bailey* and *Chancey*, the ALJs had concluded that the claimants were disabled, but the courts observed that the ALJs failed to establish the claimants' disability onset dates using clear medical evidence and thereby contravened SSR 83-20. *See Bailey*, 224 F. Supp. 3d at 1254–56; *Chancey*, 2017 WL 3781228, at *7. In fact, in reaching this conclusion, *Bailey* cited an unpublished Eleventh Circuit case that remarked that "[t]he plain language of SSR 83-20 indicates that it is applicable only after there has been a finding of disability." *Bailey*, 224 F. Supp. 3d at 1258 (quoting *Caces v. Comm'r, Soc. Sec. Admin.*, 560 F. App'x 936, 939 (11th Cir. 2014)). Reviewing these authorities, the court does not agree with Morgan that the ALJ, who concluded that she was not disabled, committed reversible error by failing to seek medical advice to establish her disability onset date.[2]

---

[2] Morgan adds to this argument that the Appeals Council should have exhibited a 2020 evaluation by Dr. Jarrod Warren because this report would have led to a finding of disability. *See* doc. 12 at

14

C.

Morgan argues last that the ALJ, using the vocational expert's testimony, improperly (1) determined that Morgan could not perform her past work, which the vocational expert deemed "sheltered work," and (2) failed to give a full description of Morgan's limitations to the vocational expert and thus could not rely on the expert's testimony. *See* doc. 12 at 29. The court rejects the first contention because, as the SSA basically argues, the nature of a claimant's past work at Step Four does not influence whether the claimant can perform other work at Step Five. *See* doc. 16 at 15. In other words, even if Morgan's past work was "sheltered," it does not necessarily follow that Morgan would be unable to perform other work.

The crux of the issue is Morgan's second contention—that the ALJ inaccurately described Morgan's limitations to the vocational expert—because an ALJ must pose hypotheticals that "comprehensively describe[] the claimant's impairments" as supported by the evidence. *See Loveless v. Massanari*, 136 F. Supp. 2d 1245, 1250 (M.D. Ala. 2001) (citing *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985)). *See also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004). According to Morgan, the ALJ failed to "accurately state [Morgan's] cerebral palsy . . . [,] her limited use of both hands[,] and her

---

27; R. 2. Morgan does not support this contention, however, *see generally* docs. 12; 17, and the court will not credit a conclusory argument. *See N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.").

15

depression." Doc. 12 at 29.  However, the ALJ described a hypothetical person who could "perform work at a light level of exertion, could frequently handle and finger bilaterally, and . . . could understand, remember, and carry out simple instructions and attend to those for two-hour periods, and tolerate occasional interaction with the public and with coworkers."  R. 91–93.  As the SSA asserts, it seems that the ALJ limited this hypothetical to "frequent handling and fingering bilaterally" in an effort to "account for [Morgan's] cerebral palsy" and "include[ed] mental and social restrictions to account for her depression."  *See* doc. 16 at 15.  For her part, Morgan does not explain how these qualifications fail to account for her impairments.  Thus, the court cannot disturb the ALJ's decision on this ground, either.

## VI.

In sum, the ALJ's decision must be affirmed because the ALJ followed the appropriate regulations, and the decision is supported by substantial evidence.  The court will enter a separate order.

**DONE** the 27th day of July, 2022.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE